WILLIS ALDRICH VS. THE TOWN OF LONDONDERRY.

WINDSOR,
February,
1833.

The obligation on a town to support their poor arises from the Statute alone.

Aldrich
vs.
Town of
Londonderry.

No action can be maintained against a town at the suit of an individual on the general provisions of the Statute declaring it to be the duty of a town to support their own poor, nor will any action lie against them for support afforded to a pauper unless it was afforded at their request, or unless there has been a subsequent promise to pay.

When the overseers of the poor contract with any individual to support a pauper for a year, he is under no obligation to support for a longer period.

If the individual supports the pauper after his year has expired, no action can be maintained against the town therefor, on the ground that they neglected to take the pauper away.

This case came up from the County Court, upon the following bill of exceptions.

"This was an action of assumpsit, brought by the plaintiff, to recover for meat, drink, washing lodging, doctoring, nursing and other necessaries, furnished and provided by the plaintiff, for one Jemima Jerald, a pauper of the said town of Londonderry.

The cause went to the Jury under the General Issue.

It was conceded by the defendants, that the said Jemima Jerald, was a pauper of said town of Londonderry, and, that said town agreed with the plaintiff, to support her one year, ending the 15th day of March, 1831, for $22,00.

The plaintiff, to maintain the issue on his part, introduced, as a witness, Stephen Stoddard, who testified, that in April 1831, Mr. Wait, one of the overseers of the said town of Londondary, came to the plaintiff's house in Ludlow, where the said Jemima Jerald then was, and paid over to the plaintiff, some money, betwixt 10 and $15, for keeping her the previous year; and tried to make a bargain with the plaintiff, to keep the said Jemima Jerald another year; that the plaintiff asked $1,00 per week for keeping her, which Mr. Wait refused to give; the plaintiff then offered to keep her another year for 75 cents per per week. That Mr. Wait refused, and said he was not authorized by the town to give any more, than they had given before, to wit, $22 per year. Mr. Wait then concluded, when the travelling should get to be good, he would come after her.

The plaintiff, then offered to prove, that Wait did then return to Londonderry, and the said Jemima Jerald re-

WINDSOR,
February,
1833.

Aldrich
vs.
Town of
Londonderry.
mained at the plaintiffs, and, that the said Wait, or any other overseer of the poor of said Londonderry, or any other person on their behalf, did not come after the said Jemima Jerald, until tho 31st day of May, 1831, when a new contract was made with plaintiff for her support; and, that the plaintiff did continue to keep and support the said Jemima Jerald, from the said 15th day of March to the 13th day of May aforesaid.

And the plaintiff, also offered the testimony of Dr. Archabald McEwen, tending to prove, that during said time, to wit, on the 27th day of April 1831, at the request of the plaintiff, he visited the said Jemima Jerald, and administered to her medicine and medical advice; that he found her seriously sick, and in immediate need of medical aid; and, that he charged the plaintiff for the same $1,75, and that the plaintiff afterwards, to wit, on or about the 1st day of October 1831, paid him the same.

The plaintiff also offered the testimony of one Josiah Gilson, tending to prove, that on the said 27th day of April 1831, he was at the plaintiffs in Ludlow, and discovered, that the said Jemima Jerald was very sick, and in need of medical aid, and advised him to send for a physician to attend her, and, that the plaintiff did then immediately send for the said doctor Ewen; and also tending to prove the amount of expense, necessarily incurred by the plaintiff, in sustaining the said Jemima Jerald from the 15th day of March to the 31st day of May aforesaid; but the plaintiff did not offer any other testimony to prove any request from the town of Londonderry to Mr. Aldrich, the plaintiff, to provide for the said Jemima, except as hereafter mentioned.

All which was objected to by the counsel of the defendants, on tho ground that there was no evidence, tending to show any request of the town to the said Aldrich, to furnish the said meat, drink, washing, and lodging, doctoring, nursing, or other necessaries to the said pauper; and, that the testimony, introduced and offered, did not tend to prove any promise, express or implied, or any liability on the part of the said town of Londonderry.

The Court decided, that the same be excluded.

The plaintiff then offered the testimony of one Silas

Warren, tending to prove, that Mr. White, one of the overseers of the poor of said Londonderry, acknowledged that the said doctor's bill was due to the plaintiff, from the said town of Londonderry.

WINDSOR,
February,
1833.

Aldrich
vs.
Town of
Londonderry.

Which was objected to by the counsel for said town of Londonderry, and the Court decided that the same be excluded.

The plaintiff then submitted to a nonsuit, with leave to move to have it set aside.

To which decisions of the Court, the plaintiff doth except, and prays, that his exceptions be allowed, and that the cause pass to the Supreme Court for their decision thereon; that the said nonsuit be set aside, and a new trial be granted him.

*Washburn, for plaintiff.*—1st. The plaintiff insists, that the facts prove an implied request on the part of the said town of Londonderry to the plaintiff, to keep the said Jemima from the said 15th day of March, till they should come after her, and to provide suitably for her support, and also, an implied promise and liability on the part of the said town to pay the plaintiff so much money, as he reasonably deserved to have, for keeping and supporting her during all that time, and especially from the said 15th day of March to some time in April, when the said town tried to make a new bargain with the plaintiff, as aforesaid, and therefore ought not to have been excluded from the jury. Vt. Stat. 370; 1 Chip. Rep. 458; 2 do. 103, *Jamaica* vs. *Guilford.*

2d. The plaintiff further insists, that the said town of Londonderry were legally bound to support the said Jamima, she being a 'pauper of said town, and, that it appears by the case, that they had made no other provision for her support, from the said 15th day of March to the 31st day of May, 1831, and were therefore under an implied promise and liability to pay the plaintiff, or any other person, who might have furnished her with support, during that time.

3d. The plaintiff further insists that the testimony, which he offered of Doct. McEwen and Josiah Gilson, would have tended to prove an implied request on the part of the said

town of Londonderry to the plaintiff, to provide for the said Jamima the medical aid, which he furnished, and an implied promise and liability to pay him the sum of money, which he had advanced and expended for that purpose, because it would have appeared by said testimony, that the said Jemima was under immediate necessity of having medical aid, and said town was at considerable distance from the place, where they had put the said Jemima, and could not furnish it in sufficient season themselves; and it does not appear, that they had made any other provision for that purpose, and therefore the said testimony ought not to have been excluded from the jury.

4th The plaintiff further insists, that the testimony of Silas Warren, tending to prove, that Mr. White, one of the overseers of the poor of said Londonderry, acknowledged, that the said Doctor's bill was due to the plaintiff, from the said town of Londonderry, ought not to have been excluded from the jury.

*O. Hutchinson & Marsh, for defendants.*—This is an action of Indebitatus Assumpsit, in which plaintiff declares in two general Counts.

1st. That defendants, on the 25th day March, 1832, were indebted to the plaintiff in the sum of $20, for meat drink, washing, lodging, nursing and doctoring one Jemima Jerald, a pauper, belonging to said town, by the plaintiff, before that time, found and provided, at the special instance and request of said town—and being so indebted in consideration thereof, promised to pay said sum on demand.

2d. A *quantum meruit* for the same provisions and services. Plea, Non Assumpsit.

At the trial at November term, before Mr. Justice Williams and others, the plaintiff neither proved, nor offered to prove, any request, employment or promise, by the town, or any of its agents, to render said services, or to pay for them when rendered.

And the general question was, whether the plaintiff, without such request, employment or promise could recover. The Court decided, that without such proof, the defendant was not liable.

It was admitted that Jemima Gerald, was a pauper belonging to Londonderry; and proved that plaintiff had rendered the services mentioned in the declaration.

It is now contended, that this opinion was correct.

WINDSOR,
February,
1833.

Aldrich
vs.
Town of
Londonderry.

The case of Gallup against the town of Pomfret, ruled in this County, some few years since, though not reported is relied on, as directly in point.

In that case, the plaintiff was called by the friends of the pauper, who had been crushed by a falling tree, and needed immediate assistance; and was by the plaintiff trepanned and dressed. The plaintiff continued, to attend on the pauper till he was cured. During this time, the overseer of the poor was sometimes present and made no objection, to the employment of the plaintiff; but it did not appear, that the authority of the town, ever directly requested or employed plaintiff, or promised to pay him.— The town it was holden was not liable.

In the case of *Middlebury* vs. *Hubbarton*, it was decided that no action would lie by one town against another town except in cases coming directly within some clause of the statute, creating a liability.—*Middlebury vs. Hubbarton*, 1 D. Chip. Rep. 205.

In the case of *Atwood* vs. *Atwood*, in this Court, which some of the members of the Court may remember, (not reported,) in this County and in this Court it was ruled that no relative of the pauper who had contributed more than his share towards the support of a poor relative, could maintain an action against another relative equally liable for his aliquot-part; and that this whole subject between towns and individuals, and between different individuals, was matter of statutory provision. That there was no common law remedy in such cases, unless the parties had made themselves liable by special contract, and that whoever claimed any redress in such cases must assert his claim on the principles, and in the manner prescribed by the statue.

In the case of *Edwards* vs. *Davis*, in the State of New York, the same principles are recognized and the same decision as in *Atwood* vs. *Atwood*. *Edwards* vs. *Davis* 16 John. Rep. 281.

2d. This is an action of general Indebitátus Assumpsit,

WINDSOR,
February,
1833.

Aldrich
vs.
Town of
Londonderry.
which will not lie to enforce a cause of action which is within the statute.

In *Middlebury* vs. *Hubbardton*, before cited it was decided that under either section of the statutes the declaration cannot clearly state a case, exhibiting all the facts necessary to bring the case within some one of the provisions of the statute ; and that indebitatus assumpsit, would not lie in such case.

And in the case of *Edwards* vs. *Davis* (also before mentioned,) that there is no common law obligation, by which a child is liable to support an indigent parent.

The duty of one relative to support another who is in indigent circumstances, is holden to be an imperfect obligation, which the common law will not enforce, and that the performance of all such duties, can be enforced only by statutory provisions.

If this be so—if a parent cannot on principles of common law, be compeled to support a child after coming of age, or a child a parent, or, if one child cannot be compelled to refund his proportion of what has been expended by another, in the support of an infirm parent; how can it be pretended, that an individual, by his own voluntary act, can impose an obligation on the town or parish, to refund money or pay expences, which he may have incurred without request or promise to pay, where there is not even an imperfect moral obligation on the party ?

All such expenditures must be regarded as mere charitable and voluntary acts of kindness, for which no action will lie even against the party benefited, as was ruled in the case of *Bennington* vs. *McGennas.* 1 D. Chip. R. 44.

This was a mere *voluntary* act, for which no action will lie.

It would be extremely inconvenient and vexatious to the towns, if relations and friends of paupers, might provide for them, and create expense at their own discretion without request or employment by the town, and thereby bring the town in debt, and have a right of action for every act of kindness done to those, whom the town must support. 2 East. 506.

WINDSOR,
February,
1838.

Aldrich
vs.
Town of
Londonderry.

The opinion of the Court was pronounced by

WILLIAMS, J.—If the town of Londonderry are liable to the plaintiff, it must be on the testimony of Mr. Stoddard; for if the County Court were right, in considering that this testimony did not tend to prove any contract on the part of the defendant, they properly excluded the other testimony offered, which only proved the performance of the services for which the action was brought and the necessity and value of those services.

No principle seems to be better settled than this, that there is no implied contract on the part of a town, to pay for services, or relief afforded to a pauper, which was not afforded at their special request.

The obligation resting on a town to provide for the poor, is a statute obligation, and may be treated like the obligation of a child to support its parents, or of a parent to support his adult children, to be enforced only in the cases specified in the statute and in the mode therein pointed out. If it was not for the requirements of the statute, and the duty which rests on every citizen to do that which the law requires, there would be no obligation on a town which would be considered as a consideration for a subsequent promise. That there can be no implied contract that a town should pay an individual for affording assistance to those who are destitute, and who are in fact paupers, may be inferred from the nature of the obligation they are under, and appears most abundantly from the cases which have been decided both in England and in this country.

The general provisions of the statute that the overseers of the poor shall relieve, support, and maintain, their own poor (and there is no similar provision in the English statute,) has never been considered as creating an obligation on a town or parish, which could be enforced at the suit of an individual. They judge for themselves, under the order of a Justice of the Peace in certain cases, the nature and extent of the relief which the necessities of a pauper may require. No individual, without their knowledge and consent, can afford the relief and maintain an action of indebitatus assumpsit therefor, however urgent or great may be the necessities of the case. The cases in which this

Windsor,
February,
1833.

Aldrich
vs.
Town of
Londonderry.

doctrine has been established are numerous. The case of *Aiken et al* vs. *Banwell*, 2 East. 505, and *Gent* vs. *Tompkins*, 1 Dow & Ry. 541; *Miller* vs. *Inhabitants of Somerset*, 14 Mass. 396; *Kittridge* vs. *Inhabitants of Newbury*, do. 448; *Edwards* vs. *Davis*, 16 John. 281; *Middlebury* vs. *Hubbarton*, 1 D. Chip. 205; *Jamaica* vs. *Guilford*, 2 D. Chip. 103; *Gallup* vs. *Pomfret*, decided in this County, Aug. Term, 1822; *Washburn* vs. *Vernon Windham*, Feby. 1832, & *Lowell* vs. *Pownel*, Ben. Feby. 1833, are all of them authorities for this doctrine. We think therefore, there is no right in the plaintiff to maintain this action against the defendants, founded on the consideration alone, that Mrs. Jerald was a pauper of the town, was in need of relief, and that he offered her the necessary support, arising either from the common law, or the general provisions of the statute before mentioned.

The next enquiry then must be whether there was any express request, contract or undertaking on the part of the overseer of the poor of the town of Londonderry, which would authorise the plaintiff to relieve, support, and maintain, Mrs. Jerald, and provide for her physicians and medical attendance as her necessities might require, and recover therefor against the town in *quantum meruit*. And it may be remarked if he can recover for the services rendered, during the time claimed, he might upon the same principle recover for her support to this time, if the overseers of the poor had not taken her away.

Overseers of the poor, are considered as the agents of the town in relation to taking charge of the poor. In the case of all agents, where their authority is particular and limited, they cannot bind their principal further than they are authorised, more especially, when the extent of their authority is known and disclosed. In this case the extent to which the overseer of the poor of Londonderry was authorised, was made known to the plaintiff. It appears that he made known to the plaintiff his purpose in coming to his house, the extent to which he was authorised to contract, and the highest sum he was at liberty to agree to pay, and this sum was twenty-two dollars a year, the same which they had given the year before. This the plaintiff refused to accept. Now if Mr. Wait was not authorized

WINDSOR,
February,
1833.

Aldrich
vs.
Town of
Londonderry.

to make any other contract with the plaintiff or to bind the town for any thing beyond that sum, it is difficult to see how he could lay them under an obligation to the plaintiff for an indefinite sum, and for an uncertain period of time, by his failure to contract.

It is contended however, that by Mr. Wait's saying he would come after Mrs. Jerald when the wheeling was good, it is to be considered that he employed the plaintiff to keep her until that time at the expense of the town, and that it was the duty of the overseers of the poor to take her away from the plaintiff's when his contract expired ; and it is asked whether the plaintiff should have turned her out of doors.

It appears the plaintiff was not at liberty to infer that he was employed to keep this woman at the expense of the town, when he was informed of the extent of Mr. Ward's authority, and both he and Mr. Wait refused to make any contract.

When the year expired for which he contracted to keep her, he might refuse to make any further supplies for her support, might have turned her out of doors, if he chose, or taken any other course, which he thought proper, as, he would, if any other person was in his house for whom he did not feel under obligation to provide. If she was an entire stranger to his family and was in good health, (and it does not appear but that she was in her usual health, at this time) he would undoubtedly, have refused any longer to maintain her. But if she was connected with his family (and it is said that she was his mother in law,) he would probably keep her until she could be removed some where else, comfortably and without suffering any inconvenience arising from travelling at this season of the year. Any further support which he might have offered her would be upon the ground of charity or affection to her, but would not be on the ground of obligation, arising from any contract express or implied between him and the defendant.

There was nothing therefore in the testimony of Mr. Stoddard which would justify the inference that there was any request, contract or undertaking on the part of the defendant, which would authorize a recovery by the plaintiff in this case.

Windsor,
February,
1833.

Aldrich
vs.
Town of
Londonderry.

The evidence offered as to the acknowledgements made by Mr. White, one of the overseers of the poor of the town of Londonderry was also properly rejected.

It is at least doubtful whether the evidence of the admissions of an overseer of the poor as to a transaction past, can in any case be received when such person is a competent witness. In England the admission of rated inhabitants are received as the admissions of a party to the suit, but it was strongly intimated in the case of *the King* vs. *the Inhabitants of Hardwick*, 11 East. 578; that as the interest of the inhabitants was very trifling the party who offers the declaration, should first call on the person who made the admission, and unless he refused to testify, evidence of his declarations would be entitled to very little weight. A statute has been passed, making all inhabitants witnesses in settlement cases, 54 Geo. III. c. 170. Since the passing of that statute it has been intimated that the admissions or declarations of an inhabitant would not, now, be received. The question however has not been directly decided to my knowledge. It is not necessary that we should now decide that question, as upon other grounds we think the testimony was inadmissible.

The acknowledgement of Mr. White was not the admission of any fact, or evidence of any fact, not a declaration of any thing done by him or either of the other overseers which would have the effect to make the town chargable. It was nothing more, than his opinion, that the physician's bill was due from the town to the plaintiff. From the view which has already been taken, this opinion could not have been correct unless the town employed the physician or requested the plaintiff so to do. Moreover, if the physician was employed, his claim was directly against the town; the plaintiff by paying him did not thereby make the town his debtor. The opinion of any individual belonging to a town, whose interest and feelings might be adverse to theirs, that a sum of money was due from such town ought not to be received in any case to charge them. So that if it should be considered (which is not decided in this case) that the declarations of the inhabitants of a town, can be received in evidence against them in a suit to which they are a party, and when the inhabit-

Windsor,
February,
1833.

Aldrich
vs.
Town of
Londonderry.

ant whose declaration is offered is an admissible witness; yet the acknowledgment which was offered in this case, was not the admission of any fact or contract or in relation to any act of the overseers which, if proved, would have fixed any liabilities on them.

The judgement of the County Court is therefore affirmed.