## LENT IVES vs. WALLINGFORD.

The select men and overseers of the poor cannot make a contract obligatory on the town, for the support of a person having a settlement therein, for a greater sum than five dollars, without an order from a justice of the peace, in pursuance of the 20th section of the statute in relation to settlements and providing for the poor.

This was an action of assumpsit brought by the plaintiff to recover for board, washing, lodging, doctoring and other necessaries furnished and provided for one Patty Preston belonging to and resident in said town of Wallingford. It appeared on the trial that said Patty, on the 24th day May, A. D. 1834, she being then about twenty four years of age, became suddenly sick and remained so until her death, in the month of December following, and during all that time required constant nursing, doctoring and other necessaries; and that the plaintiff furnished the same to the said Patty from the said 24th day of May, A. D. 1834, to the      day of          following. It further appeared on said trial, that two of the select men of the town of Wallingford requested the plaintiff to take charge of the said Patty and furnish her with every thing necessary, and that the town of Wallingford would compen-

RUTLAND,
February,
1836.

Ives
vs.
Wallingford.

sate and pay him for the same. It appeared further, on said trial that said Patty, in October, A. D. 1833, was taken sick, and for a short time was furnished and assisted with medical advice and attendance by one of the select men of the town of Wallingford, when she partially recovered and was able to be about; the expense of which medical advice and attendance was paid by orders on the town treasurer, drawn by the select men in the usual way. It also appeared that said Patty, as early as the year 1825, commenced going out to work for herself, and continued thus to work at different places till she became sick and deranged; and she did not appear to have become chargeable to the town, except as has been before stated; and that in the year 1833 and 1834, when the said Patty was relieved, as aforesaid, there were three select men in said town of Wallingford and they were the overseers of the poor. The court decided the said town of Wallingford was liable for such supplies and necessaries as the plaintiff had furnished said Patty, and the jury returned a verdict accordingly; to which opinion the defendant excepted.

*Smith and Ormsbee for defendants*—The contract made with the plaintiff by the overseers, is not binding on the town.

Where a poor person, belonging to a town, applies to the overseers for relief, the statute has pointed out the way in which relief may be afforded, and this must be pursued.—Statute Ch. 47 No. 1—See 20, *Lovell* vs. *Pownall*, Bennington county supreme court, Feb. term, 1833—*Middlebury* vs. *Hubberton*, 1 Chip. R. 205—*Jamaica* vs. *Guilford*, 2 do. 103—*Aldridge* vs. *Londonderry*, 5 Vt. R. 448—*Londonderry* vs. *Windham*, 2 do, 149—*Essex* vs. *Milton*, 3 do. 17—12 Mass. R. 333, 452—14 do. 396, 448—4 Con. R. 553—8 John. R. 249, 323—16 do. 281—18 do. 382.

*Linsley and Briggs for plaintiff.*—It appearing from the case, that the town of Wallingford was liable to support the pauper, the only question is, whether the supplies were furnished under such authority as will bind the town?

1. A majority of the select men, as overseers of the poor, are competent to make a valid contract that will bind the town.—Statute 370, 2d sec.—*Middlebury* vs. *Rood*, 7 Vt. R. 125.

II. The only remaining question is, can the select men, as overseers, make a valid contract for the support of the poor, without an order from a justice of the peace?

1. The statute having required the towns, peremptorily, to sup-

29

RUTLAND,
February,
1836.

Ives
vs.
Wallingford.

port the poor, it would seem to follow, that those officers elected for the purpose of performing this duty, must have power to fulfil the obligation resting upon the town. If the select men, as overseers of the poor have not full power to support the poor, then the town cannot do it, for they act only by their agents. To hold that overseers can only furnish such support as a justice may order, is interposing a check upon the action of the town, entirely inconsistent with the obligation resting upon them. The justice being no officer of the town, cannot be, in any manner, controlled by them. The language of the 2d section, requiring the overseers to provide houses, nurses, physicians and surgeons, in such case as they or a majority of them shall judge necessary, &c., is entirely incompatible with the idea that their action is to be controlled by a justice of the peace.

2. The 20th section of the statute is only applicable to those cases where the pauper has never been relieved by the town. The pauper in this case having been before relieved by one of the select men, and his acts adopted by the payment of the bills, no judicial enquiry was necessary to charge the town.

3. The 20th section of the statute is only applicable to those cases where a person has not been supported by the town, but requires some assistance in aid of his own exertions. The 2d section enacts, that every town shall relieve, support and maintain, &c. *Relief* and support are very different things. The 20th section says, that if any poor person shall apply for relief, manifestly contemplates something different from support. The 5th section, imposing a penalty on the overseers in certain cases, omits the word '*relieve*,' because the case to which the section is applicable, obviously contemplates an entire support.

4. If it should be considered that the overseers of the poor can only draw money from the treasury in the manner pointed out under the 20th section, yet it by no means follows that they cannot make a valid contract for the support of the poor.

5. The select men have powers far more extensive than overseers, and are competent to charge the town by their contract.

6. The construction contended for would make the statute wholly inapplicable to numerous cases. A pauper in sickness requires, it may be, a daily charge in its support. What would be an ample provision to-day might be wholly insufficient to-morrow.

7. The construction which the statute has received through the state from its passage to the present time, should be decisive upon

this point; for if it is considered that the meaning of the 20th section is doubtful, yet a construction has been adopted by general consent, which ought not to be disturbed.

RUTLAND,
February,
1836.

Ives
vs.
Wallingford.

8. The 20th section is merely directory to the overseers, and cannot affect a third person who contracts with them in their official capacities; for they have no means of knowing whether the overseers have obtained the requisite order.

The opinion of the court was delivered by

WILLIAMS, CH. J.—The question in this case is, whether the town is liable for the contract of the overseers of the poor. The undertaking, or promise relied on by the plaintiff to charge the defendant, was made by the select men or overseers of the poor. The authority of the select men is not more extensive, when they act as overseers of the poor, than if they had been elected to the latter office alone. As their power is given by statute, so the extent of their authority is to be learnt from the provisions of the statute. An opinion has been entertained, and has been indirectly asserted in this case, that the powers of the overseers of the poor to bind the town, are unlimited; that, under the second section of the statute for the support of the poor, and designating the duties and powers of the overseers, they may make any contract for the relief, support and maintenance of the poor, and that such contracts will be obligatory on the town. On the other hand it is contended, that, by the 20th section of the same statute, the overseers of the poor are limited in the amount of their expenditures, either to the sum of five dollars, or such further sum as, on a consultation with a justice of the peace, may be ordered by him. As the practice in different parts of the state, under this statute, has been dissimilar, and as it is contended that a practice has very generally prevailed, which would seem to render the 20th section wholly inoperative and useless, it becomes necessary to turn our attention to different parts of the statute, and learn what are its provisions. We might consider the question before us as settled by the authority of adjudged cases. In the case of *Washburne* vs. *the town of Vernon*, in Windham county, Feb. 1832, a question precisely similar to the one under consideration, was raised and decided by the court; and on the authority of that case, another, in Bennington county, Feb. 1833, of *Lovel* vs. *the town of Pownal*, was decided. As those cases are not reported, it has been supposed in the argument, that they were decided upon other

RUTLAND,
February,
1836.

Ives
vs.
Wallingford,

grounds than upon the construction of the section of the statute before named; we have, however, since the argument, in addition to the recollection of those of our brethren who were present when those cases were decided, ascertained that the court decided and intended to decide, that the overseers of the poor could make no promise to bind the town for the support of a person who had not been a pauper of the town, except in such cases as are within the section of the statute before mentioned, or within one or the other of the provisions to that section.

It will be remembered that the obligation of a town to relieve and support the poor, is created by statute. In an individual the exercise of charity is a duty, yet it is one of imperfect obligation. The duty of a town is entirely a legal obligation, and cannot be enforced either between towns, or between a town and an individual, except by statute. The second section of the statute makes it the duty of every town " to relieve, support and maintain their own poor." It requires the overseers of the poor to relieve, support and maintain all the poor, lame, blind, sick and others, *inhabitants within* such town or place, who are not able to maintain themselves," and to provide suitable houses, nurses, physicians, &c., and also, to take effectual measures to prevent the poor resident within the town from strolling into any other town. This section probably embraces all, or nearly all the cases in which relief is to be afforded by a town. It is evident however that the duty created by this section has not been considered as absolute, so that without any further provisions, an action could be maintained against a town for the support of a pauper, on their neglect to support him. It is true it was at one time held, that an action might be maintained by one town against another, for expenses of supporting a pauper, without an order of removal. This idea has however been repudiated, and the later decisions have been, that no action can be maintained by one town against another for the support of their poor, except under the 4th and 11th sections of the statute. Under the 4th there must be an order of removal, and no part of the expenses for such support, antecedent to such order, can be recovered.—*Londonderry* vs. *Windham*, 2 Vt. R. 149.—*Essex* vs, *Milton*, 3 Vt. R. 17. It is also very evident, that an individual can maintain no action against a town for advances made for the support of a person poor and in need of relief, by proving the destitute condition of the person to whom the advances were made, unless there was some contract on the part of the town by their authorized agents. The second section of the statute can therefore have no effect on the question now before us.

RUTLAND,
*February*,
1836.

Ives
*vs.*
Wallingford.

The transient person . who may be suddenly taken sick, or lame, or be otherwise disabled and in need of relief, does not come within the terms of the 20th section, which provides only for poor persons belonging to any town or district. In the case of the transient poor, the whole duty of providing for their support is laid upon the overseers of the poor, of the town where the person, in need of relief, happens to be ; the expenses of which are to be reimbursed by the town or place of such person's legal settlement, or by the relations of such person, liable by law for his or her support.

It may be doubtful whether the 20th section applies, in the first instance, to the poor who are removed to the town of their settlement, according to the 3d and 4th sections of the statute. Such poor persons are to be lodged with the overseers of the poor of the town or place, to which the removal is had ; and by the 5th section, a penalty is laid on the overseers of the poor, who refuse to receive or neglect to provide for the support and maintainance of such persons. These three sections, the 3d, 4th and 5th apply to a particular class of poor. They may be considered as embracing all the provisions which are necessary. As there must be an adjucation by a regular tribunal, which, until reversed or appealed from, decides the question of the settlement of the pauper of his being chargeable or likely to be chargeable, and commencing the relation of town pauper ; probably the overseers of the poor, to which the pauper is removed, might provide for the support of such person and make a contract binding on the town, without complying with the requisitions of the 20th section. This question however is not before us in the present case, and the remarks are only made because reliance has been had, by the counsel for the plaintiff, on the provisions of the 2d, 3d, 4th and 5th sections, as having a bearing on this cause. In all other cases of poor persons belonging to a town and applying for relief, and when the relation of town pauper has not commenced, we consider that the 20th section must govern, and its provisions must be complied with, or the town cannot be made liable for a greater sum than five dollars, nor can a sum exceeding that be drawn from the treasury unless upon an order made by a justice of the peace on consultation with the overseers of the poor. To consider this section as merely directory, would render it entirely useless and nugatory, and would be a repeal of the statute. The section is positive in its provisions, and it is prohibitory upon the overseers of the poor as to making any other or further allownace than what shall be directed by the order. It was intended as a limitation on the authority of the

RUTLAND,
February,
1836.
____
Ives
vs.
Wallingford.
agents of the town, and also to relieve those agents from the entire responsibility of determining who were the proper objects of the relief, provided for the poor, and of the extent of the relief to be affected.   The provisions of this section and the first providing clause are, that if any poor person, belonging to a town, shall apply for relief to the overseer or overseers of the poor, if he is under the necessity of immediate relief, the overseers may draw on the treasurer of the town for a sum not exceeding five dollars for that purpose, without any application to a justice of the peace ; but if the necessity is not so pressing, or if a greater sum is wanted, the overseer or overseers of the poor are to make application to a justice of the peace of the county, and the justice, together with the overseer or overseers, are to enquire into the state and circumstances of the persons applying, and if it appears to them that the person is in indigent circumstances, the justice is to give an order in writing to the overseers, to make such allowance weekly or otherwise to such poor person, as they in their discretion shall think his circumstances require ; and this order is their authority to draw money from the treasury of the town.   To make the town of Wallingford liable to the plaintiff, under the circumstances detailed in the bill of exceptions, would be to enable a majority of the overseers of the poor, to leap over the provisions of the statute, and to charge the town *ad libitum*, for the support of any person they might direct and to any amount.   We are confident they had no such power, and that the town are not liable.

The provisions of this section are so plain, it is a matter of some astonishment that they should ever have been disregarded ; more particularly, as we find that there has *always* existed in this state, a similar limitation on the authority of the overseers of the poor. By the first statute on the subject of supporting the poor, passed in 1779, Slade's State Papers, 378, authority was given to the select men, as overseers of the poor, when they were chosen, "to " expend or disburse, out of the town stock or treasury, what they " shall judge necessary from time to time, for the relief and sup-" port of any of the poor belonging to their towns, *so far as to* " *the amount of ten pounds;* and if *more* be needful, the said se-"lectmen, or overseers, or the major part of them, shall, with the " advice of the *authority* of that town, (if any there be,) expend " and disburse what shall be by them judged needful for the relief " of the poor, as aforesaid."   A statute in terms precisely similar had existed in Connecticut.   On the revision of our statutes in March 1787, a similar provision was made nearly in the same words, with this difference, that the sum which the overseers were

authorized to expend, without the advise of the authority of the
town, was limited to four pounds. In these statutes it was provi-
ded, that if there was no justice of the peace in the town, the se-
lectmen or overseers were empowered to act as fully as if they
had such advice. Our present statute, which was passed in 1797,
limited the expenditures by the selectmen or overseers to five dol-
lars; and further provides that if there is no justice of the peace
in the town, the overseers shall make application to any justice of
the peace in the county ; thus confining their authority as to ex-
penditures at the expense of the town, or to charging the town,
to that sum, and no more.

The result to which we come is, that the overseers of the poor
of Wallingford were not authorized to make the contract in ques-
tion to charge the town ; and for that reason, the judgment of the
county court must be reversed, and a new trial granted. Wheth-
er the circumstances of the case are such, that they will be liable
to the amount of five dollars, must depend on the facts which may
be made to appear on another trial.