## TOWN OF CHELSEA v. TOWN OF WASHINGTON.

*Case.* *Paupers.* *Liability of Towns for Neglect and Breach of the Duties Imposed by ss. 1, 2, c. 20, Gen. Sts.*

An action on the case cannot be maintained against a town for neglect or breach of the duties imposed by ss. 1, 2, c. 20, Gen. Sts. whereby its paupers stroll into another town in which they have no legal settlement, and there become chargeable to such other town.

Towns are not liable for the unlawful acts of their overseers of the poor, when acting without the scope of their authority.

CASE in three counts. The first count alleged, that on March 1, 1873, Mary J. Judd, of Washington, and her five minor children, were poor and indigent persons, and in need of relief and support, and then had and still have their legal settlement in said town of Washington, and had become and then were chargeable to said town as paupers, and were then and there in the care, custody, and keeping of said town as paupers thereof; that by s. 1, c. 20, of the Gen. Sts., it was the duty of said town to relieve and support all poor and indigent persons lawfully settled therein, whenever they should stand in need of such relief, and by s. 2 of said chapter it was the duty of said town, through its overseer of the poor, to take effectual means to prevent all such poor and indigent persons from strolling into other towns; that said town neglected its said duty, and suffered the said Mary J. and her said children to stroll and come, and they did stroll and come, into the town of Chelsea, where they had no legal settlement, and where they became chargeable to said town of Chelsea, and had been supported by said town, to its great damage. The second count alleged, in addition, that the town of Washington *purposely* suffered and permitted the said Mary J. and her said children to stroll and go into the town of Chelsea, where they had no legal settlement, *for the purpose of compelling* said town of Chelsea to relieve and support them. The third count alleged, in addition, that the town of Washington, through its overseer of the poor and

other officers, took effectual measures to *cause* the said Mary J.
and her said children to stroll and go into the town of Chelsea,
where they had no legal settlement, and through its overseer of
the poor did *fraudulently advise, solicit, and induce the said Mary
J., through the promise of money and other things,* to marry one
Henry Dunbar, a poor and indigent person residing in said Chel-
sea, but who had no legal settlement therein, nor in this state, *for.
the fraudulent purpose of compelling* the said town of Chelsea to
maintain and support the said Mary J. and her said children ; by
means of which said advice, solicitation, and promises of money
and other things, the said Mary J. did, on Oct. 5, 1873, marry
the said Dunbar, whereby the town of Chelsea had been compelled
to maintain and support her and her said children. General de-
murrer to the declaration. The court, at the December Term,
1875, POWERS, J., presiding, sustained the demurrer, adjudged
the declaration insufficient, and rendered judgment for the defend-
ant. Exceptions by plaintiff.

*S. B. Hebard* and *C. W. Clarke,* for plaintiff.

The plaintiff submits that the facts set forth in the declaration
are sufficient on which to render judgment against the defendant.
But it is claimed by defendant that the action will not lie against
the *town,* the *corporation.* It cannot be claimed but that the facts
set forth in the declaration present all the legal elements to found
a liability upon ; some party ought to be liable for the damage
which has accrued to a third party by reason of the neglect of a
plain duty. It would seem to be sufficient to say, that a duty is
imposed upon the defendant town by the statute, and that that
duty has been neglected, by means of which neglect the plaintiff
is damnified. If this action will not lie, the plaintiff is without
remedy. The result of this neglect of duty was exactly what the
statute was intended to prevent. Certain paupers in the care and
keeping, and then under the oversight of the town of Washing-
ton, were suffered to stroll into the town of Chelsea, and there
became chargeable, and immovable, because there the pauper in-
termarried with a person having no settlement in the state, and so
the right which the town of Chelsea would have had to remove,

was suspended by the marriage. *Marshfield* v. *Edwards*, 40 Vt. 245 ; *Newark* v. *Sutton*, 40 Vt. 261.

The principles on which corporations are held liable in actions of trespass *de bonis*, and also in trespass *quare clausum*, on account of acts of their officers, for libel, and also in case for fraudulent practices by their officers and agents, sustain this action, and so the declaration is sound, both on principle and authority. Angell & Ames Corp. s. 387. The same doctrines apply to municipal corporations. Where a duty is specially enjoined to be performed by officers, and the duty is neglected, the corporation is liable. Abbott's Digest, 524 *et seq.;* 3 Hill, 612, and cases cited. The remarks by POLAND, J., in *Houston* v. *Kimball*, 22 Vt. 579, support the point here contended for.

We submit that the defendant is liable under the third count, even if it would be necessary to prove the *animus* there charged, in order to sustain the action. That count charges not only neglect of duty and consequent damages, but absolute interference on the part of the officers of the town to induce the strolling and the marriage, by means of which the town of Washington would reap benefit, if this suit cannot be sustained ; and the town seeks to reap the benefit of not only the neglect of its officer to do his plain, statutory duty, but of his positive wrong in procuring the paupers to stroll, and an intermarriage effected.

*H. A. White (J. W. Rowell* with him), for defendant.

It is contended that no action lies to recover damage consequent upon a breach of the duty imposed by s. 1, c. 20, of the Gen. Sts. The decisions of this court afford abundant authority to that effect. *Middlebury* v. *Hubbardton*, 1 D. Chip. 205 ; *Aldrich v. Londonderry*, 5 Vt. 441, 447 ; *Ives* v. *Wallingford*, 8 Vt. 224, 228 ; *Houghton* v. *Danville*, 10 Vt. 537 ; *Churchill* v. *West Fairlee*, 17 Vt. 447 ; *Baxter* v. *Winooski Turnpike Co.* 22 Vt. 114, 123 ; *State* v. *Burlington*, 36 Vt. 531 ; *Riddle* v. *Prop. Locks & Canals*, 7 Mass. 169, 187 ; *Mower* v. *Leicester*, 9 Mass. 247 ; *Bigelow* v. *Randolph*, 14 Gray, 541 ; *Eastman* v. *Meredith*, 36 N. H. 284: *Russell et als.* v. *The Men of Devon*, 2 T. R. 667.

A town cannot be made liable for the neglect of its officers to perform their official duty, nor for their tortious acts in and about the business of their office, unless made so by statute. *State* v. *Burlington, supra; Mitchell* v. *City of Rockland*, 52 Me. 118; *White* v. *Marshfield, ante*, 20.

The opinion of the court was delivered by

PIERPOINT, Ch. J. This case comes before us upon a demurrer to the declaration. The declaration, in the first two counts, alleges that one Mary J. Judd and her five minor children were paupers, and had their legal settlement in the town of Washington, and were in the care, custody, and keeping of said town therein, and being aided and supported by said town; that said town allowed the said paupers to "stroll" into the town of Chelsea, where they became chargeable to the town of Chelsea, and were there supported by said town of Chelsea, to its damage. The third count, in addition, alleges that the defendant town, through its overseer of the poor, did cause the said Mary J. and her children to "stroll" into said town of Chelsea, and did then and there fraudulently induce the said Mary J. to marry one Dunbar, a poor and indigent person residing therein, who had no legal settlement in said Chelsea, nor in any town in this state, whereby the said town of Chelsea was compelled to support said paupers, &c.

The facts alleged are admitted to be true by the demurrer, and the question arises, whether upon those facts, an action can be maintained by the town of Chelsea against the town of Washington. In s. 1, c. 20, Gen. Sts., it is provided, that "every town shall relieve and support all poor and indigent persons lawfully settled therein, whenever they shall stand in need thereof." Sec. 2 provides, that the overseers of the poor shall have the care and oversight of all such poor and indigent persons so long as they remain at the charge of their respective towns, * * * "and said overseers shall take effectual measures to prevent such poor and indigent persons from strolling into other towns." Sec. 3 provides, that "the said overseers in their respective towns, shall also provide for the immediate comfort and relief of all persons

residing or *found* therein, though they have not a legal settlement in such town, when they fall into distress and stand in need of immediate relief, *and until they shall be removed to the places of their lawful settlement, if they have any.*" Sec. 4 prescribes the method by, and the circumstances under, which the removal may be made, and this is the only remedy which the statute gives, except in certain specified cases ; and when this is resorted to, it has long been settled in this state, that there can be no recovery for support or expenses incurred by the removing town, prior to the time when the removal is made. 2 Vt. 149 ; 3 Vt. 17.

In the case of transient persons, who are not the subjects of an order of removal, not having *come to reside* in a town where they have no settlement, the statute provides that if such persons " shall be suddenly taken sick or lame, or shall be otherwise disabled, and confined at any house in any town, or shall be committed to any jail, and shall be in need of relief," &c., that they shall be cared for in the manner pointed out in the 13th section, and that the expenses and charges incurred therefor, may be recovered of the town where such persons are legally settled ; but except in such contingencies, no remedy is given for expenses incurred in the support of transient paupers.

The obligation of towns to support the poor and needy within their limits, is purely statutory, and without the statute, no town is under any legal obligation to furnish such support, and no action can be maintained against any town for neglect or refusal to furnish such support, except where such remedy is given by the statute, and then in the manner pointed out by the statute, or where the action is based on some contract. This has been repeatedly held in this state. 1 D. Chip. 205 ; 5 Vt. 441 ; 8 Vt. 224 ; 10 Vt. 537 ; 17 Vt. 447.

But it is said the gist of this action is, that the town, through its overseer, did not restrain the paupers and prevent them from " strolling " into the plaintiff town. But it is difficult to see how they can be made liable for neglect in this respect, if they are not liable for neglecting to support them. The overseers are under the same obligation to take care of and furnish them with needful support, that they are to restrain them. This provision

of the statute was obviously more for the purpose of giving the overseers authority to restrain the paupers for the protection and convenience of the town itself, than for the protection of other towns, and clearly was not intended to create a liability on the part of the town to other towns or persons. If such had been the intention, a right of action would have been given therefor.

In the third count it is alleged that the overseers of the town of Washington were active participants in the going of the paupers to Chelsea, and in bringing about the marriage of said Mary J. to said Dunbar, who had no settlement in this state, and thereby the plaintiff town was deprived of the right it would otherwise have had, of removing the paupers to Washington. The effect of the marriage on the right of removal, is the same, whether brought about by the agency of the overseers or otherwise. The paupers cannot be removed, as that involves a separation of husband and wife. Such are our decisions. For such a contingency, the statute makes no provision. If the law is defective in this respect, the remedy is with the Legislature and not with the courts. The alleged action of the overseers of the poor could not have the effect to make the town chargeable. They were not the agents of the town for any such purpose ; the appointment conferred no such authority upon them ; but on the contrary, they were acting outside of their authority, and in direct violation of their duty ; their acts could not bind the town. If their conduct in the transaction was of such a character as to bring them within s. 31 of said chapter, they have made themselves personally liable to a penalty of $500, and all the damages the town of Chelsea has sustained or may sustain by being compelled to support said paupers. But that is a matter not involved in this inquiry.

Judgment affirmed.